UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Lucy's Burgers, LLC, a Minnesota
limited liability company,                           Court File No. _____

       Plaintiff,

vs.                                                                    **COMPLAINT**

Society Insurance, Inc., a
Wisconsin corporation,

       Defendant

_____

Plaintiff, Lucy's Burgers LLC, a Minnesota limited liability company, ("Plaintiff") for their Complaint against Defendant, Society Insurance, Inc., states and alleges as follows:

## **PARTIES**

1. Plaintiff is a Minnesota limited liability company, with its principal place of business in White Bear Township, Minnesota. Plaintiff has a Businessowners Policy from Defendant under Defendant's Policy No. BP19037072 (the "Policy"), which covers losses for occurrences at Plaintiff's restaurant.

2. Defendant, Society Insurance, Inc., is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in Minnesota and elsewhere. Defendant is incorporated in the State of Wisconsin and maintains its principal place of business in Wisconsin.

1

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Defendant exercises substantial, systematic and continuous contacts with Minnesota by doing business in Minnesota, serving insureds in Minnesota, and seeking additional business in Minnesota.

5. This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the Policy with respect to the loss of business arising from the civil authority event detailed below.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Plaintiff's claims occurred within the State of Minnesota.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff is the owner and operator of a restaurant in White Bear Township, Minnesota and has been forced, by the emergency executive orders of Minnesota Governor, Tim Walz, to cease operations — through no fault of its own — as part of the State's efforts to slow the spread of the COVID-19 global pandemic. To protect its business from this type of situation, which threatens Plaintiff's livelihood based on factors wholly outside of Plaintiff's control, Plaintiff obtained business interruption insurance from Defendant. In breach of its insurance obligations that it voluntarily undertook in

exchange for Plaintiff's premium payments, Defendant has denied Plaintiff's claims arising from the State-ordered interruption of Plaintiff's business.

8. As a result, Plaintiff now brings this action against Defendant for Defendant's failure to honor its obligations under the Policy issued to Plaintiff, which provides coverage for losses incurred due to a "necessary suspension" of its operations, including when its business is forced to close due to a government order.

9. On March 16, 2020, during the term of the Policy issued by Defendant to Plaintiff, Minnesota Governor Tim Walz issued an order first closing all restaurants and bars to the public in an effort to address the ongoing COVID-19 pandemic. ("EO-20-04"). On March 25, 2020, Governor Walz ordered all Minnesotans to stay at home and cease all business and recreational activities, with certain limited exceptions. ("EO-20-20"). Also, on March 25, 2020, Governor Walz issued an executive order extending his previous order closing all restaurants and bars to the public. ("EO-20-18"). On April 8, 2020, Governor Walz issued an executive order extending the order closing bars and restaurants and the stay at home order until May 3, 2020. ("EO-20-33"). The executive orders specifically provide that further extensions are possible. The March 16, March 25, and April 8 orders are hereinafter collectively referred to as the "Closure Orders."

10. As a result of the Closure Orders, the Plaintiff has been forced to halt ordinary operations, resulting in substantial lost revenue and forcing the Plaintiff to furlough or lay off the majority of its employees.

11. Despite Defendant's express promise in its Policy to cover the Plaintiff's business interruption losses when the government forces them to close, Defendant issued a blanket

denial to Plaintiff for any losses related to the Closure Orders, without first conducting any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under Minnesota law. See March 24 Letter attached hereto as "Exhibit B."

12. To the extent Defendant has provided any reason to Plaintiff for its categorical assertion that Plaintiff's losses are not covered, the denial is based on the assertion that the "actual or alleged presence of the coronavirus," which led to the Closure Orders which prohibited Plaintiff from operating the Plaintiff's business, does not constitute "direct physical loss." *See* **Exhibit B**.

13. Defendant's conclusory statement that the actual or alleged presence of a substance like COVID-19 does not result in property damage is contrary to the law in Minnesota.

14. Moreover, unlike many commercial property policies available in the market, the policies sold by Defendant do not include an exclusion for loss caused by a virus. Thus, Plaintiff reasonably expected that the business interruption insurance it purchased from Defendant included coverage for property damage and business interruption losses caused by viruses like the COVID-19 coronavirus.

15. If Defendant had wanted to exclude pandemic-related losses under the Plaintiff's Policy, as many other insurers have done in other policies, it easily could have attempted to do so on the front-end with an express exclusion. Instead, Defendant waited until after it collected Plaintiff's premiums, and after a pandemic and the resulting Closure Orders caused catastrophic business losses to Plaintiff, to try to limit its exposure on the back-end through its erroneous assertion that the presence of the coronavirus is not a "physical loss"

and, therefore, is not a covered cause of loss under the Policy.

16.     The fact that the insurance industry has created specific exclusions for pandemic-related losses under similar commercial property policies, undermines Defendant's assertion that the presence of a virus, like the coronavirus, does not cause "physical loss or damage" to property. Indeed, if a virus could never result in a "physical loss" to property, there would be no need for such an exclusion. Moreover, Defendant's assertion ignores the fact that their Policy promised to provide coverage for losses incurred due to government actions "taken in response to dangerous physical conditions," even if those dangerous physical conditions cause damage to property at locations other than those insured under their Policy.

17.     Thus, Defendant's wholesale, cursory coverage denials are arbitrary and unreasonable, and inconsistent with the facts and plain language of the Policy it issued.

18.     As a result of Defendant's wrongful denial of coverage, Plaintiff files this action for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance coverage it purchased under the Policy, for indemnification of the business losses they have sustained, for breach of contract, and for bad faith claims handling under Minn. Stat. § 604.18.

## FACTUAL ALLEGATIONS

19.     Plaintiff restates, realleges, and incorporates by reference, the allegations and admissions in the preceding paragraphs as though fully restated herein.

**A.      The Defendant Policies**

20.     In exchange for substantial premiums, Defendant sold the commercial property

insurance Policy promising to indemnify the Plaintiff for losses resulting from occurrences, including the "necessary suspension" of business operations at the insured location caused by a government order, during the relevant time period.

21. The Policy was issued to Plaintiff at its principal place of business in Minnesota.

22. The relevant provisions setting forth the scope of coverage for business interruption losses are the same under each policy. Plaintiff's Policy is attached here as "**Exhibit A**."

23. The Policy is an "all risk" policy that provides broad coverage for losses caused by any cause unless expressly excluded.

24. The Policy issued to Plaintiff does not exclude losses from viruses or pandemics. Thus, the all-risk Policy purchased by the Plaintiff covers losses caused by viruses, such as COVID-19.

25. In addition to property damage losses, Defendant also agreed to "pay for the actual loss of Business Income" sustained by Plaintiff "due to the necessary suspension" of Plaintiff's operations during the period of business interruption caused "by direct physical loss of or damage to covered property" at the insured's premises.

26. With respect to business interruption losses, "suspension" means: (1) "the partial slowdown or complete cessation of your business activities"; or (2) "that a part or all of the described premises is rendered untenantable if coverage for Business Income applies."

27. "Business Income" is defined in relevant part under the Policy as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no

physical loss or damage had occurred" plus "continuing necessary operating expenses incurred."

28. Defendant also promised to "pay necessary Extra Expense" Plaintiff incurs during the period of interruption that Plaintiff "would not have incurred if there had been no direct physical loss or damage to covered property at the described premises."

29. "Extra Expense" is defined in relevant part under the Policy as any expense incurred (1) "to avoid or minimize the suspension of business and to continue operations at the described premises"; (2) "[t]o minimize the suspension of business if [Plaintiff] cannot continue operations"; or (3) "to [r]epair or replace any property[.]"

30. The Policy purchased by Plaintiff also includes "Civil Authority" coverage, pursuant to which Defendant promised to pay for the loss of Business Income and necessary Extra Expense sustained by Plaintiff "caused by action of civil authority that prohibits access" to Plaintiff's insured premises.

31. This Civil Authority coverage is triggered when any non-excluded cause results in "damage to property other than property" at the Plaintiff's premises and is intended to cover losses resulting from governmental actions "taken in response to dangerous physical conditions."

**B.    The Plaintiff's Losses Due to the Coronavirus Pandemic and the Closure Orders.**

32. On March 13, 2020, the President of the United States declared a national emergency based on the nationwide outbreak of SARS-CoV-2 (the "Coronavirus"), which causes the disease commonly known as COVID-19.

33. Emerging research on the Coronavirus and recent reports from the CDC indicate that the virus physically infects and can stay alive on surfaces for at least seventeen (17) days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Bars, restaurants, movie theaters, and other public gathering places are thought to be especially dangerous to public health.

34. In response to the pandemic, and the spread of the Coronavirus in the Twin Cities and throughout the State of Minnesota, Governor Tim Walz issued Executive Order 20-04 on March 15, 2020 requiring that all bars and restaurants close to the public beginning on March 17, 2020. The Closure Orders restricting access to bars and restaurants have been extended and will now be effective until at least May 3, 2020, and the Closure Orders could be extended beyond May 3, 2020.

35. The continuous presence of the Coronavirus on or around Plaintiff's premises has rendered the premises unsafe and unfit for its intended use and therefore caused physical property damage or loss under the Policy.

36. The Closure Orders were issued in direct response to these dangerous physical conditions, and prohibited the public from accessing Plaintiff's restaurant, thereby causing the necessary suspension of its operations and triggering the Civil Authority coverage under the Policy. Executive Order 20-04 specifically states, "the following places of public accommodation are closed to ingress, egress, use, and occupancy by members of the public: a. Restaurants, food courts cafes, coffeehouses and other places of public accommodation offering food or beverage for on-premises consumption …"

37. Governor Walz's March 25, 2020 Closure Order (EO-20-20) closing all "non-

essential" businesses in Minnesota, including all restaurants, likewise was made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiff's premises.

Like the March 15, 2020 Closure Order, the March 25, 2020 Order prohibited the public from accessing Plaintiff's restaurant, thereby causing the necessary suspension of their operations and triggering the Civil Authority coverage under the Policy.

38. On April 8, 2020, Governor Walz issued an executive order providing that "The closure of bars, restaurants, and other public accommodations set forth in Executive Order 20-04, as amended by Executive Orders 20-08 and 20-18, is extended until May 3, 2020 at 11:59 pm." EO-20-33.

The Closure Orders provide that persons who violate the Closure Order shall be guilty of a misdemeanor. (Id.). Moreover, any "business owner, manager, or supervisor" who encourages or solicits the violation of the Closure Orders shall be guilty of a gross misdemeanor. (Id.). The Closure Orders further authorize civil penalties up to $25,000 per violation.

39. As a result of the Closure Orders, the Plaintiff has suffered substantial Business Income losses and incurred Extra Expense. The covered losses incurred by Plaintiff and owed under the Policy is increasing every day. As a result of these catastrophic losses, the Plaintiff has been forced to furlough its workers.

40. Following the March 15, 2020 Closure Order, the Plaintiff submitted a claim to Defendant requesting coverage for their business interruption losses promised under the Policy (collectively, the "Closure Order Claims").

41. Defendant has denied Plaintiff's Closure Order Claims, either verbally or in writing.

## COUNT I: DECLARATORY JUDGMENT

42. Plaintiff restates, realleges, and incorporates by reference, the allegations and admissions in the preceding paragraphs as though fully restated herein.

43. Plaintiff's Policy is an insurance contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing Plaintiff to close its business.

44. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums, in exchange for coverage under the Policy.

45. Defendant has arbitrarily and without justification refused to reimburse Plaintiff for losses incurred by Plaintiff in connection with the covered business losses related to the Closure Orders and the necessary interruption of its business stemming from the Coronavirus pandemic.

46. An actual case or controversy exists regarding Plaintiff's rights and Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic.

47. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

(a)     Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy.

(b)     Defendant has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing a blanket coverage denial without conducting a claim investigation as required under Minnesota law; and

(c)     Defendant is obligated to pay Plaintiff for the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders pursuant to the terms of the Policy.

## **COUNT II: BREACH OF CONTRACT**

48.     Plaintiff restates, realleges, and incorporates by reference, the allegations and admissions in the preceding paragraphs as though fully restated herein.

49.     The Policy is a valid and enforceable contract, which was supported by consideration.

50.     The Policy is an insurance contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing it to close its business. The Policy is a valid and enforceable contract, which was supported by consideration.

51.     Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

52.     Plaintiff has performed any conditions precedent (if any were required) to

Defendant's obligations under the Policy, or such conditions precedent have been waived by Defendant.

53. By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Orders and the Coronavirus pandemic, Defendant has breached its coverage obligations under the Policy.

54. As a result of Defendant's breach of the Policy, Plaintiff has sustained substantial damages in excess of $75,000 for which Defendant is liable, in an amount to be established at trial.

### COUNT III: STATUTORY PENALTY FOR BAD FAITH DENIAL OF COVERAGE (MINN. STAT. § 604.18

55. Plaintiff restates, realleges, and incorporates by reference, the allegations and admissions in the preceding paragraphs as though fully restated herein.

56. Upon receipt of the Closure Order Claims, Defendant immediately denied the claim without conducting an investigation, let alone the "reasonable investigation" required under Minnesota law. *See* Minn. Stat. § 604.18; *Peterson v. W. Nat'l Mut. Ins. Co.*, 930 N.W.2d 443, 450 (Minn. Ct. App. 2019), *review granted* (Aug. 6, 2019)

57. Defendant lacked a reasonable basis to deny Plaintiff's claim for coverage.

58. Defendant knew that it lacked a reasonable basis for the denial.

59. Pursuant to Minn. Stat. § 604.18, subd. 4, Plaintiff is entitled to an award of (1) an amount equal to one-half of the proceeds awarded that are in excess of an amount offered by the insurer at least ten (10) days before the trial begins, or $250,000, whichever is less, (2) reasonable attorney fees actually incurred to establish the insurer's liability in this

proceeding, and (3) additional punitive or exemplary damages as allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that the Court:

1. Enter a declaratory judgment on Count I of the Complaint in favor of Plaintiff and against Defendant, declaring as follows:

 (a) Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;

 (b) Defendant has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's loss by issuing blanket coverage denials without conducting a claim investigation as required under Minnesota law; and

 (c) Defendant is obligated to pay Plaintiff for the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders pursuant to the terms of the Policy.

2. Enter a judgment on Count II of the Complaint in favor of Plaintiff and against Defendant and award damages for breach of contract in an amount in excess of $75,000, the precise amount to be proven at trial;

3. Enter a judgment on Count III of the Complaint in favor of Plaintiff and against Defendant for taxable costs in an amount equal to the total of (1) an amount equal to one-half of the proceeds awarded that are in excess of an amount offered by the insurer at least ten (10) days before the trial begins, or $250,000, whichever is less, (2) reasonable attorney

fees actually incurred to establish the insurer's liability in this proceeding, and (3) additional punitive or exemplary damages as allowed by law;

4. Award to Plaintiff and against Defendant prejudgment interest, to be calculated according to law, to compensate Plaintiff for the loss of use of funds caused by Defendant's wrongful refusal to pay Plaintiff for the full amount in costs incurred in connection with Closure Order Claims.

5. Award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

GDO LAW

Dated:  April 27, 2020

/s/ Peter Frank
Peter J. Frank (#0395361)
Mark E. Duea (#0027351X)
4770 White Bear Parkway, Suite 100
White Bear Lake, MN  55110
(651) 426-3249
peterfrank@gdolaw.com
*Attorneys for Plaintiff*